IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEYCITY CAPITAL, LLC,          §
                              §
                Plaintiff,    §
                              §  Civil Action No. 3:21-CV-2046-D
VS.                           §
                              §
DAVENPORT INVESTMENTS, LLC,   §
and JOHN QUINN,               §
                              §
                Defendants.   §

MEMORANDUM OPINION
AND ORDER

Defendants Davenport Investments, LLC ("Davenport") and John Quinn ("Quinn") move to dismiss this action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, or under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. Alternatively, they move to transfer this action to the District of Delaware under 28 U.S.C. § 1404(a). For the reasons that follow, the court grants defendants' alternative motion to transfer venue under § 1404(a), denies the balance of defendants' motions as moot, and transfers this action to the District of Delaware.

I

Plaintiff KeyCity Capital, LLC ("KeyCity") is a real estate investment firm that sought to develop homes in Tennessee. Anticipating development costs approaching $100 million, KeyCity sought funding from a "passive" investor via an offering memorandum circulated "to the marketplace." Am. Compl. ¶ 19.

Through a third-party broker, defendants Davenport and Quinn expressed interest.

KeyCity responded that it sought only a limited-partner-like relationship, and it expected that defendants would not interfere with any project decisions.  To memorialize their intended relationship, the parties negotiated and exchanged multiple drafts of a letter of intent ("LOI").

Eventually, the parties agreed to the LOI.  Pursuant to the LOI, KeyCity provided defendants a $140,000 deposit to conduct diligence.  KeyCity alleges that the LOI was "non-binding" and "purported to bind only KeyCity to the LOI."  *Id.* at ¶ 24.  KeyCity also asserts that the parties planned that any changes to the LOI would be incorporated into a future joint venture agreement.[1]  The LOI contains the following provision, which the court sets out in pertinent part:

> This letter shall be governed by the laws of the state of Delaware (without regard to conflicts of law) and the Parties shall submit to the exclusive jurisdiction of the courts of the State of Delaware and the federal courts sitting in the State of Delaware.  The Parties hereby agree to the granting of equitable relief, including injunction and specific performance, without proof of actual damages, in the event of any breach hereof, in addition to all other remedies available at law or in equity.  In the event of litigation relating to this letter, the nonprevailing Party or Parties shall pay the reasonable legal fees and costs incurred by the prevailing Party or Parties in connection with such litigation, including any appeal therefrom.

Am. Compl. Ex. 1 (ECF No. 6-1) at 4-5.  KeyCity alleges that Quinn and Davenport

---

[1]Indeed, Quinn at one point stated that the LOI would be modified to correct a mistake, although Davenport later retracted this statement, saying that the LOI reflected their deal.

knowingly or recklessly made misrepresentations to induce KeyCity to enter into the LOI.[2] These statements included (1) that Davenport only sought to be a passive investor and (2) that the asset management fee, which was orally agreed to be 2% but specified as 1.5% in the LOI, could be changed after the LOI was signed.

When the parties attempted to finalize a joint venture agreement, the draft agreements that they exchanged contained terms "either not discussed, not agreed upon, and substantially different than those contained in the LOI." *Id.* at ¶ 27 (The parties are currently still negotiating the terms of the joint venture agreement.[3]).

KeyCity then filed this lawsuit. In response to its complaint, defendants filed a motion to dismiss or transfer under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(3) and § 1406(a) for improper venue, or, alternatively, to transfer the case to the District of Delaware under § 1404(a). To comply with an order of this court, KeyCity then

---

[2]The first amended complaint ("amended complaint") and the briefing persistently fail to distinguish between Quinn and Davenport, or attribute Quinn's actions to Davenport. For example, the amended complaint only alleges that Quinn, not Davenport, made the statements. Similarly, it also does not state that Quinn made these statements on behalf of Davenport. *See* Am. Compl. ¶¶ 31-33, 35. And in KeyCity's response brief, it asserts that "Defendants"—plural—"made affirmative representations." P. Resp. (ECF No. 27) at 10. Nevertheless, the court will assume *arguendo* that references to Quinn's actions also apply to Davenport because neither party distinguishes between the actions of the two. *See* Ds. Mot. to Dismiss (ECF No. 11) at 2-3 (referring to defendants collectively as one entity); Ds. Reply (ECF No. 31) at 1 (same).

Relatedly, Quinn asserts that he signed the LOI in an official capacity as Davenport's representative, not in an individual capacity. But neither party seems to discuss the significance of this for the present motions.

[3]Davenport has accused KeyCity of failing to comply with its agreements under the LOI, including failing to negotiate in good faith and to facilitate due diligence.

filed a first amended complaint and application for declaratory relief ("amended complaint"). In response to the amended complaint, defendants again moved on the same grounds to dismiss or, in the alternative, transfer this case to the District of Delaware.[4]

II

Because the court concludes that this lawsuit should be transferred to the District of Delaware pursuant to a mandatory forum-selection clause in the LOI, it will confine its discussion to defendants' alternative motion to transfer under § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

Generally, a court cannot reach the merits of a case without first determining that it has subject matter and personal jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). But a court can address a transfer motion before addressing subject matter or personal jurisdiction,[5] *see id.* at 432, because a ruling on a motion to transfer under § 1404(a) is "not a decision on the merits." *Hardwick v. Factor*, 2011 WL 1831706, at *2 (S.D. Tex. May 9, 2011) (Rosenthal, J.). And a federal court "has considerable leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir.

---

[4]Defendants filed the second motion shortly after filing the first, contending that they had not seen KeyCity's amended complaint.

[5]In *Sinochem* the Supreme Court addressed a *forum non conveniens* dismissal, not a § 1404(a) motion to transfer. *See Sinochem*, 549 U.S. at 427. But as *Sinochem* explains, § 1404(a) merely codifies the doctrine of *forum non conveniens* and provides for the transfer of a case from one federal court to another. *Id.* at 430.

- 4 -

2018) (quoting *Sinochem*, 549 U.S. at 431).[6]  Although in the "mine run of cases" the court should address subject matter and personal jurisdiction first, *see Sinochem*, 549 U.S. at 436 ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground."); *Sangha*, 882 F.3d at 100, the court in this case will first decide defendants' motion to transfer under § 1404(a).  The court is opting for this approach because the jurisdictional issues presented in this case— particularly relating to the court's personal jurisdiction over defendants in relation to KeyCity's request for declaratory relief—are inadequately briefed, will not affect the court's ultimate decision about whether to transfer this case, and present "particularly thorny questions."  *See Sangha*, 882 F.3d at 100-01 (holding that district court did not abuse its discretion in addressing personal jurisdiction and *forum non conveniens* before subject matter jurisdiction because of "the conceptual difficulty of and uncertainty surrounding the issue.");  *see also Sinochem*, 549 U.S. at 436 ("Where subject-matter or personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."); *McCormick v. Payne*, 2015 WL 7424772, at *2 (N.D. Tex. Nov. 23, 2015) (Lynn, J.) (addressing venue before subject matter jurisdiction because

---

[6]*See Wellogix, Inc. v. SAP Am., Inc*., 648 Fed. Appx. 398, 400 (5th Cir. 2016) (per curiam) (holding that "enforcing a forum selection clause-based dismissal is permissible before" addressing other issues, such as subject matter jurisdiction); *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008) (Kaplan, J.) (addressing § 1404(a) motion before other jurisdictional issues); *see also Suter v. United States*, 2020 WL 874812, at *1-2 (N.D. Tex. Jan. 28, 2020) (Rutherford, J.), *rec. adopted*, 2020 WL 870225 (N.D. Tex. Feb. 21, 2020) (Boyle, J.); *McCormick v. Payne*, 2015 WL 7424772, at *2 (N.D. Tex. Nov. 23, 2015) (Lynn, J.) (collecting cases).

"the subject matter jurisdiction inquiry involves a detailed improper joinder analysis.").[7]

### III

Section 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (emphasis in original). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In cases where there is no forum-selection clause, district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. They analyze § 1404(a) motions under the familiar private- and public-interest factors and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62-63 (quoting § 1404(a)).

But in cases where there is a valid forum-selection clause "[t]he calculus changes," because the clause "represents the parties' agreement as to the most proper forum." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that circumstance, district courts must "adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the

---

[7]The court recognizes that, "[i]n the mine run of cases," such a jurisdictional inquiry will foster judicial economy. *See Sinochem*, 549 U.S. at 436. This is not such a case.

parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 64. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Accordingly, in a case involving a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52.[8]

KeyCity relies on several grounds to oppose the motion to transfer under § 1404(a): the forum-selection clause is not mandatory; the clause is not binding; and, if it is binding and mandatory, it does not cover this dispute.

## IV

The court turns initially to the question whether this litigation is controlled by a valid, mandatory forum-selection clause.[9]

---

[8]Defendants appear to assert the relevance of the forum-selection clause in both the motion to transfer under § 1404(a) and § 1406(a). But "[a forum-selection] clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine*, 571 U.S. at 59. "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.* And "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59-60 (quotation omitted).

[9]The *Atlantic Marine* Court did not address whether the clause at issue in that case was valid or mandatory because it "presuppose[d] a contractually valid forum-selection clause." *Atl. Marine*, 571 U.S. at 59 n.5.

A

The court must first address the choice of law.  Although federal law "governs the *enforceability* of forum selection clauses, it does not govern *interpretation* of such clauses." *DBS Sols. LLC v. Infovista Corp.*, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016) (Lynn, C.J.) (emphasis in original) (citing *Weber v. PACT XPP Techs. AG*, 811 F.3d 758, 770 (5th Cir. 2016)).  Federal courts sitting in diversity must apply the forum state's choice-of-law rules.  *Weber*, 811 F.3d at 770.

After determining the choice of law, the court must next decide whether the forum-selection clause is mandatory or permissive.  *See Weber*, 811 F.3d at 769-70 ("Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play."); *Sabal Ltd. LP v. Deutsche Bank AG*, 209 F.Supp.3d 907, 917 (W.D. Tex. 2016) ("A court must first determine whether a forum selection clause is mandatory or permissive."); *see also Granoff as Tr. of Granoff Acquisition Tr. v. Buoyance, Inc.*, 2020 WL 7495553, at *3 (E.D. La. Dec. 21, 2020).[10]

The court must also resolve whether the forum-selection clause is valid[11] and whether

---

[10]*Weber*, 811 F.3d at 768 ("Only mandatory clauses justify transfer or dismissal.").

[11]There is some uncertainty in this circuit concerning the choice of law when determining the validity of the clause.  *See Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) ("*Atlantic Marine* thus did not answer under what law forum-selection clauses should be deemed invalid."); *TSI USA, LLC v. Uber Techs., Inc.*, 2017 WL 106835, at *2-3 (N.D. Tex. Jan. 11, 2017) (Horan, J.), *aff'd*, 2017 WL 3209399 (N.D. Tex. June 19, 2017) (Lindsay, J.).  Nevertheless, it seems that recent cases have moved toward applying state law.  *See Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215, 223 (5th Cir. 2020) (per curiam) (applying state law); *Granoff*, 2020 WL 7495553, at *3 n.38 (same).

the claims at issue fall within the scope of the clause.  *See Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215, 223, 225-26 (5th Cir. 2020) (per curiam) (addressing both); *Granoff*, 2020 WL 7495553, at *3; *see also Braspetro Oil Servs. Co. v. Modec (USA), Inc*., 240 Fed. Appx. 612, 616 (5th Cir. 2007) (per curiam) ("Before we can consider enforcing a forum selection clause, we must first determine 'whether the clause applies to the type of claims asserted in the lawsuit." (citation omitted)); *FCX Solar, LLC v. FTC Solar, Inc*., 2021 WL 4953912, at *3 (W.D. Tex. Oct. 25, 2021).

B

The court will assume *arguendo* that Delaware and Texas law both control because the result is the same.[12]  The parties do not affirmatively agree on which law applies, but they do not dispute this issue either.  Texas courts "permit choice-of-law agreements and the default position is that they are enforceable."  *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015); *see also Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014).  The LOI contains a choice of law clause that provides that it is governed by Delaware law.  Am. Compl. Ex. 1 (ECF No. 6-1) at 4 ("This letter shall be governed by the laws of the State of Delaware (without regard to conflicts of law) . . .").  The court would thus be inclined to conclude that Delaware law governs the interpretation of the forum-selection clause because

---

[12]As already explained, state law, not federal law, governs the interpretation of a contract: whether it is mandatory or permissive, valid, and the claims are within the scope of the clause.  *See Weber*, 811 F.3d at 769-70 (applying state choice-of-law rules to determine whether clause mandatory or permissive); *Fintech Fund*, 836 Fed. Appx. at 223, 225-26 (applying state law to latter two issues)

- 9 -

neither party appears to dispute its validity.  *See DSA Promotions, LLC v. Vonage Am., Inc.*, 2018 WL 1071278, at *3 (N.D. Tex. Feb. 27, 2018) (Fitzwater, J.).

But the parties do not cite many Delaware cases interpreting forum-selection clauses (KeyCity appears to cite one, and defendants none).  And both sides appear to cite *Texas*—not *Delaware*—law to support their interpretations of the forum-selection clause.[13] Accordingly, because the parties appear to agree (at least) that one of the states' laws applies to the interpretation of the forum-selection clause (and the court deems the states' law to be similar) the court assumes *arguendo* the same.  *See Weber*, 811 F.3d at 771 ("Courts may be justified in pretermitting this [choice of law] analysis when neither party contends that any distinctive feature of the relevant substantive law decides the dispute."); *ESW Capital, LLC v. Skoczkowski*, 2018 WL 1833989, at *3 & n.4 (W.D. Tex. Mar. 7, 2018), *rec. adopted*, 2018 WL 6795855 (W.D. Tex. Sept. 24, 2018).

## C

The court holds next that the forum-selection clause in the LOI is mandatory. KeyCity posits that the clause is not mandatory because it does not specify that litigation *must* occur in the specified forum.  In other words, KeyCity contends that the clause is silent

---

[13]KeyCity also appears to cite cases using what can be termed "general contract principles."  *See Weber*, 811 F.3d at 771.  But as explained in *Weber*, this general law does not apply.  *See id.* at 770 ("We conclude that we are bound to engage in the ordinary choice-of-law analysis that federal courts sitting in diversity routinely perform under the *Erie–Klaxon* doctrine.").

as to what proceeding, if any, must be brought in Delaware courts.[14] Defendants respond that KeyCity is reading the clause too narrowly and is ignoring clear, mandatory language in the clause, such as "exclusive jurisdiction."

Under Delaware law, "[f]orum selection clauses may be permissive or mandatory." *In re Bay Hills Emerging Partners I, L.P.*, 2018 WL 3217650, at *5 (Del. Ch. July 2, 2018). "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *Id.* (quotation omitted). On the contrary, mandatory forum-selection clauses contain clear language and state that the litigation will occur exclusively in the chosen forum. *Id.*

The forum-selection clause at issue here is mandatory under Delaware law because it provides that "the Parties shall submit to the exclusive jurisdiction of the courts of the State of Delaware and the federal courts sitting in the State of Delaware." Am. Compl. Ex. 1 (ECF No. 6-1) at 4. Although this clause does not contain common mandatory language such as "any dispute" or "any claim," *see Bay Hills Emerging Partners*, 2018 WL 3217650, at *6, it does include other mandatory language: the term "exclusive." *See id.* at *5 (stating that clause needed to contain words that litigation will proceed "exclusively in the designated

---

[14]KeyCity notes the lack of specificity in the clause, pointing out that it does not address whether litigation, all disputes, or all actions must be brought in Delaware. This argument is relevant, however, to the scope of the clause. *E.g., In re Int'l Profit Associates, Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam) (addressing an identical argument in determining scope).

forum"); *Ashall Homes Ltd. v. ROK Entm't Grp. Inc*., 992 A.2d 1239, 1246-47 (Del. Ch. 2010) (analyzing provision that stated that "[t]his Agreement shall be governed and interpreted in accordance with English law and the parties submit to the *exclusive* jurisdiction of the English courts," and stating that "[i]t is hard to imagine a clearer indication that the English courts are to have exclusive jurisdiction over disputes arising from the agreement" (emphasis in original)).

Like Delaware law, under Texas law, a forum-selection clause can be mandatory or permissive. *In re Agresti*, 2014 WL 3408691, at *5 (Tex. App. May 29, 2014, no pet.) (mem. op.). "For a forum selection clause to be considered mandatory or exclusive, the clause 'must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.'" *Id.* (quoting *City of New Orleans v. Mun. Admin. Servs., Inc*., 376 F.3d 501, 504 (5th Cir. 2004)). A permissive clause, by contrast, describes consent to jurisdiction, but does not have explicit language regarding exclusivity. *Id.* (citing *Mabon Ltd. v. Afri-Carib Enters., Inc*., 29 S.W.3d 291, 297 (Tex. App. 2000, no pet.)).

The forum-selection clause in the LOI is mandatory under Texas law. As with Delaware law, the words "exclusive jurisdiction" are key. *See Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc*., 234 S.W.3d 679, 687 (Tex. App. 2007, pet. denied) (holding that clause was mandatory that stated that "the courts of The Hague shall have exclusive jurisdiction to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement."); *see also In re Rosewood Private Invs., Inc*., 2018

WL 4403749, at *2 (Tex. App. Sept. 17, 2018, no pet.) (mem. op.) (holding that clause that stated that each party agrees to the "'exclusive' jurisdiction" of the federal courts located within the state of Delaware was mandatory); *Vak v. Net Matrix Sols., Inc.*, 442 S.W.3d 553, 560 (Tex. App. 2014, no pet.) (holding that clause that stated that "*exclusive* venue for all litigation arising under or in connection with this Agreement shall be in the courts of Harris County, Texas" was mandatory (emphasis in original)).

### D

The court holds next that KeyCity's fraud claim and request for declaratory relief fall within the scope of the forum-selection clause. KeyCity contends that, even if the clause is mandatory and valid, the clause does not govern this case because the clause does not specify *what* claims are covered. KeyCity also points to the paragraph in the LOI that includes the forum-selection clause, which states that "[t]he Parties hereby agree to the granting of equitable relief, including injunction and specific performance, without proof of actual damages, in the event of any breach hereof . . . ." Am. Compl. Ex. 1 (ECF No. 6-1) at 4. In conjunction with the forum-selection clause, KeyCity interprets this sentence (under what it says is a liberal interpretation of the LOI) to reach only breach of contract, not fraudulent inducement, claims.[15] KeyCity's arguments are unavailing.[16]

---

[15]KeyCity seeks declaratory relief on the basis "that the LOI is void" for various reasons, including that "it was induced by fraud." Am Compl. ¶ 40. KeyCity maintains that "[n]o provision of the LOI is enforceable"; and in its prayer for relief it seeks a declaration that "the LOI is unenforceable as a matter of law." *Id.* at p. 14. While these arguments may affect the validity of the clause or its enforceability, KeyCity fails to explain their legal significance; indeed, when arguing that the LOI is invalid, KeyCity focuses only on its fraud

The forum-selection clause states that "[t]his letter shall be governed" by Delaware law, and the parties must submit to exclusive Delaware jurisdiction. Am. Compl. Ex. 1 (ECF No. 6-1) at 4. The court can reject KeyCity's first argument—that the clause does not specify what it covers—because this begs the question: logically, this clause, and the reference to "this letter," must cover *something* related to the LOI—whether that is merely the interpretation of the LOI or any and all claims somehow related to the LOI.

The court looks to the context and sentences around the clause to decide what is covered. The sentence following the forum-selection clause (the same one that KeyCity highlights) authorizes equitable relief and specifies a breach of contract claim. This sentence can reasonably be read to provide that the forum-selection clause contemplates *at least* the mandatory inclusion of a breach of contract claim. In fact, given that the forum-selection clause covers "[t]his letter," it makes sense that the clause would cover a breach of the letter (the LOI).

---

allegations. *See* note 19.

[16]Under Texas law, "[w]hether . . . noncontractual claims fall within the forum-selection clause's scope depends on the parties' intent as expressed in their agreement and a 'common-sense examination' of the substantive factual allegations." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). "Legal theories and causes of action are not controlling" so that a party cannot avoid a clause by artful pleading. *Id.*

Under Delaware law, the court seeks to give effect to the parties' intent. *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 822 (Del. Ch. 2020). And "a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship." *Ashall Homes*, 992 A.2d at 1252.

But the reference to "[t]his letter" can reasonably be read more broadly[17] to include any litigation (including KeyCity's fraud claim and request for declaratory relief) involving the LOI.  This is a reasonable interpretation given that the paragraph containing the forum-selection clause contemplates litigation throughout: it discusses equitable and other forms of relief, cost-shifting "[i]n the event of litigation," appeals, and joint and several liability.

Given this broad litigation context, the court interprets the LOI's forum-selection clause to cover any claim "concerning the formation, performance, or enforcement of, or related to, their" letter.  *See Granoff*, 2020 WL 7495553, at *5 (applying North Carolina law).  And the court concludes that "each of [KeyCity's] claims – whether fraud . . . [or] breach of contract . . . – is premised on the formation or performance of the contract." *Id.*[18] KeyCity's claim for declaratory relief, which asserts contract-formation and contract-enforcement defenses and a fraud defense, likewise falls under this interpretation of the

---

[17]Under Delaware law, a forum-selection clause can be narrow or broad.  *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *4 (Del. Ch. Sept. 14, 2011).  Even assuming *arguendo* that the one at issue in this case is narrow, it would likely still cover KeyCity's claims for the reasons discussed. *See id.* at *5 (explaining that a narrow forum-selection clause still reaches actions that directly relate to a right in the contract).

[18]Indeed, it appears that the fraud claim and the grounds for KeyCity's request for declaratory relief all focus on the fraudulent statements allegedly made by Quinn in forming the LOI.  For example, among the allegations in the amended complaint concerning the statute of frauds, KeyCity alleges that the LOI is unenforceable because essential terms are missing, and it highlights the fraudulent statements as representing the missing essential terms.  And another component of the declaratory judgment claim asserts that there was no meeting of the minds because KeyCity thought that the terms Quinn discussed in his fraudulent representations would be included in the LOI.

clause.  In fact, the relief that KeyCity seeks is for the court to declare the LOI void; it is difficult to hold that its claims do not implicate "[t]his letter" if KeyCity seeks to void the LOI itself.

The court's interpretation finds support under Texas law.  *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 674, 677 (Tex. 2009) (per curiam) (holding that forum-selection clause with nearly identical language covered "judicial actions between the parties").  So, too, is the interpretation supported under Delaware law.  *See Ashall Homes*, 992 A.2d at 1243, 1253 (holding that forum-selection clause with nearly identical language covered tort and contract claims because all arose from the contract).

In sum, the court concludes that KeyCity's claims fall within the scope of the forum-selection clause.[19]

E

Having concluded that the LOI's forum-selection clause is applicable to KeyCity's claims in this lawsuit, the court now turns to the question whether the clause is enforceable.

---

[19]Beyond a conclusory statement, KeyCity does not contend that the forum-selection clause is invalid.  KeyCity does assert that the clause is not "binding" because, citing Texas law, the contract was induced by fraud.  It is unclear whether this is intended to be a challenge to the clause's enforceability or its validity.  Indeed, these two concepts are difficult to distinguish.  *See Barnett*, 831 F.3d at 302.  To the extent KeyCity is attacking the clause's enforceability under federal law on the basis that the LOI was induced by fraud, this challenge fails for the reasons discussed *infra* at § IV(E)(2).  To the extent KeyCity is challenging the validity of the clause under Texas (or Delaware) law on the basis that the LOI induced by fraud, it fails under either state's law.  *See infra* note 20.

1

Federal law governs whether the forum-selection clause is binding in this action. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [enforceability of a forum-selection clause] is federal, whether jurisdiction be based on diversity, a federal question, or some combination of the two."). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Haynsworth*, 121 F.3d at 963). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). A forum-selection clause may be considered unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963). "To qualify as unreasonable, the fraud and overreaching must be specific to the forum selection clause." *Id.* (quoting *Haynsworth*, 121 F.3d at 963).

- 17 -

2

KeyCity has not met its heavy burden of proving that the forum-selection clause is unenforceable or that enforcement of the clause would be unreasonable.  KeyCity contends that the forum-selection clause is not "binding."  P. Resp. (ECF No. 27) at 18.  In other words, it maintains that *the LOI as a whole* is unenforceable because KeyCity never assented to the LOI due to fraud.[20]  In particular, KeyCity alleges in its amended complaint that it was induced to enter into the LOI by two statements made by Quinn and Davenport: that defendants were only interested in being passive investors, and that the LOI could be modified.

Crucially, however, KeyCity has neither shown nor alleged that *the forum-clause itself* was the product of fraud or overreaching—it only contends that *the LOI as a whole* was induced by fraud.[21]  This is insufficient to render the forum-selection clause unenforceable under federal law.  *See Braspetro Oil Servs. Co.*, 240 Fed. Appx. at 615; *Grossman v. Nat'l Truck Prot. Co.*, 2015 WL 4643242, at \*4 (N.D. Tex. Aug. 5, 2015) (Fitzwater, J.); *Van Rooyen v. Greystone Home Builders, LLC*, 295 F.Supp.3d 735, 748 (N.D. Tex. 2018)

---

[20]Like federal law, Texas and Delaware law provide that fraudulent inducement to sign an agreement containing a dispute resolution agreement such as a forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion.  *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134-35 (Tex. 2004); *Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 380 (Del. 2013).

[21]It also cites case law that is inapposite to the issue before the court.  The case law cited does not appear to deal with forum-selection clauses or engage with the framework that the court cites above.

(Fitzwater, J.) ("Although the record supports the inference that they were induced to enter into the Note as part of defendants' overall fraud, they have not shown that the fraud was specific to the forum-selection clause itself.").

KeyCity has also failed to demonstrate that, for all practical purposes, it will be deprived of its day in court because of the grave inconvenience or unfairness of the selected forum, or that the fundamental unfairness of the chosen law will deprive it of a remedy. KeyCity does not make any arguments in this respect.  But to the extent KeyCity contends that litigating in a place far away would be inconvenient, it would not be *gravely* inconvenient. *See Grossman*, 2015 WL 4643242, at *5 (holding that plaintiff "must show that litigating the case in New Jersey would be gravely inconvenient or unfair. This is because mere inconvenience in litigating a case in the chosen forum may be foreseeable at the time of contracting.").  Nor does KeyCity suggest that enforcing the forum-selection clause would contravene a strong public policy of the forum state.[22]

---

[22]Texas and Delaware presume that forum-selection clauses are enforceable.  *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004); *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010).  Moreover, "[b]y entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons."  *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008) (per curiam).  To overcome this assumed mutual representation, the party challenging the forum-selection clause must present sufficient evidence of "special and unusual circumstances."  *Id.*  KeyCity has not demonstrated such circumstances.

3

" '[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (second alteration in original) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J. concurring)).  "As the party acting in violation of the forum-selection clause, [KeyCity] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer."  *Id.* at 67.

> Because [the public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

*Id.* at 64 (citation omitted) (quoting *Stewart*, 487 U.S. at 30-31).

As the party defying the forum-selection clause, KeyCity bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.  *See id.* at 67.  Although KeyCity's response touches at least indirectly on one of the public interest factors, it has failed to explicitly address the public interest factors as such, and to meet its burden of demonstrating that this is an unusual and uncommon case in which the public interest factors overwhelmingly disfavor a transfer.

For these reasons, the court holds that KeyCity's claims against defendants should be transferred to the District of Delaware.  Defendants' alternative motion to transfer venue pursuant to § 1404(a) is granted.

*   *   *

Accordingly, for the reasons explained, the court grants defendants' alternative motion under § 1404(a) to transfer venue for the convenience of the parties and witnesses and in the interest of justice.  The court denies the balance of defendants' motions as moot. This case is transferred to the District of Delaware.  The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

February 25, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE